## JOSEPH DIXON CRUCIBLE CO. *v.* BENHAM.

*(Circuit Court, D. Connecticut. November 22, 1880.)*

1. TRADE-MARK—WRAPPERS AND LABELS—STOVE POLISH.

In Equity.
*Morris W. Seymour*, for plaintiff.
*H. C. Baldwin*, for defendant.

SHIPMAN, D. J. This is a bill in equity, brought by a citizen of the state of New Jersey against a citizen of the state of Connecticut, to restrain the defendant from the use of the plaintiff's trade-mark, and for an account. The trade-mark had never been registered in pursuance of any act of Congress.

Joseph Dixon commenced the manufacture of stove polish in Taunton, Massachusetts, at least as early as in the year 1840, and was engaged in the business until 1868, either alone or as a member of the firm of Joseph Dixon & Co. He

removed to Jersey City, in the state of New Jersey, about the year 1849. The plaintiff corporation was formed in 1868, and has been continuously manufacturing said article to a large extent.

At a certain time during the period (the precise time being the only matter in dispute) Mr. Dixon commenced to put up his stove polish in elongated cubes, wrapped about by a blue paper wrapper, with printing thereon in black ink, surrounded by a heavy, double black rule or border. The ends of the wrapper were held in place by a yellow label covering the ends of the cube, with printing thereon in black also, surrounded by a double black rule. The same form, style, language, and appearance of the cube, wrapper, and label have been continued to the present time, except that the word "prepared" was substituted for "pure" in the year 1851 or 1852, and the necessary changes of the name of the manufacturers have been made. *Fac similes* of the present styles of wrapper and label, with the printed matter thereon, are given in the bill.

The answer denies only the priority of the use of the trademark by the plaintiff. Slight evidence of the truth of the allegations, which were not denied, was given by the plaintiff; but it may be considered as proved that large amounts of money have been spent by the plaintiff and its predecessors in the manufacture of the article contained in this kind of wrapper; that the article has attained an established and high character, and that its form and appearance are well known to the public. The wrappers and label, and the arrangement of the printed characters, and the language of the wrappers and labels, have become a well-known trade-mark, indicating to all purchasers that the article which is contained in the wrappers is the Dixon polish, and is made by the plaintiff. The good-will of the business, and the right to the exclusive use of the trade-mark, are valuable to the plaintiff. Joseph Dixon duly and legally assigned and transferred all his rights in the trade-mark to the plaintiff.

The defendant, a manufacturer of stove polish, under the name of the New England Lead Works, has, since 1876 or

1877, put up his article in wrappers and labels almost identical in appearance, arrangement, style of printing, and language with the plaintiff's wrappers and labels, except the necessary changes of name and address. It is not denied that the two wrappers and labels are substantially identical. The question in the case is as to priority of use. The defendant contends that he has continuously used substantially the same form and style since 1853, and that the adoption of this style by Mr. Dixon was after that date.

The plaintiff's theory is that it has satisfactorily shown that Dixon commenced the use of this trade-mark at least as early as 1847. The defendant's theory is that he commenced the manufacture of stove polish in the year 1844, and that in 1853, and before Dixon's use of the wrapper, he began to put up his article in elongated cubes, in a blue wrapper, with a yellow label, under the name of the Straitsville East India Lead Works; that, with the exception of the years between 1863 and 1867, when he was engaged in other business, he continued the use of these wrappers and labels until 1876 or 1877, when he changed to the present style, and adopted the name of the New England Lead Works, and inserted his own name as proprietor.

Mr. Benham has kept a country store in Straitsville, a village in the town of Naugatuck, and has had from $500 to $1,000 invested in the stove-polish business. It is manifest that the bulk of the product having the "East India" label was sold to peddlers, as this article was not known to the trade. He testifies, in answer to the question "Who composed the printed matter on your first label on the cube?" "I am not certain; I think Giles (Josiah Giles, a printer in Hartford) got the label up. I left it with him to get the label up. It was either him or a man named Hurlburt."

He further testifies, in substance, that this wrapper was used till 1876 or 1877, when he changed to the New England Lead Works wrapper. The printing was done by the Waterbury Printing Company. In answer to the question, "Did you send them a copy from which you instructed them to print a certain number of labels?" he said: "I do not know

whether I took up one of Exhibit A, (the East India wrapper,) or sent them one when I made the change; that is, whether I took up a package like Exhibit A, or took up a label or sent them one."

It is clearly proved that in the latter part of 1876 the Waterbury Printing Company made for the defendant as near an imitation of the plaintiff's wrapper and label as was possible, with the necessary alteration of names, and that the Dixon trade-mark was furnished by some one to the printing company for that purpose. Indeed, it is manifest from a comparison of the two wrappers that one was copied from the other. There is not so close a resemblance between the "East India" and the Dixon wrapper as there is between the latter and the wrapper of the New England Lead Works. The "directions" are entirely different. But it is apparent, from reading the descriptions of the polish which are printed on each wrapper, that the two had but one author; they are almost identical. Did Dixon copy from Benham, or did Benham copy from Dixon? It is sufficiently established that Dixon commenced the use of his wrapper as early as in 1848. Benham does not claim to have commenced until 1853. I have no doubt that the mind and the hand which prepared the Benham wrapper for the press in 1853 used the Dixon wrapper as a pattern, and that there was a conscious attempt to imitate the form in which the successful article had been presented to the public. It did not appear that the plaintiff was chargeable with laches after it discovered the defendant's wrappers and labels.

Let there be a decree for an injunction against the use or imitation, colorable or otherwise, of the plaintiff's wrappers, labels, or trade-mark, and for an accounting.